## UNITED STATES BANKRUPTCY COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**EDWARD J. SLYVIA, JR.**,                              Chapter 7
                                                        Case No. 15-10589-JNF

          Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

## I. INTRODUCTION

The matter before the Court for determination is the Trustee's Motion for Turnover of Receivable Proceeds (the "Turnover Motion"). Through the Turnover Motion, Debora Casey, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of the Debtor, Edward J. Sylvia, Jr. ("Sylvia" or the "Debtor"), seeks an order directing the Debtor to turn over to the Trustee the sum of $10,000 which, she alleges, Sylvia received from a client for legal services he rendered prior to the commencement of his Chapter 7 case. The Trustee argues that the sum of $10,000 received by the Debtor postpetition was on account of the Debtor's prepetition legal services and is property of the estate. The Debtor, appearing *pro se*, filed an Opposition to the Turnover Motion in which he maintained that the payments the Trustee seeks to recover were on account of postpetition legal services rendered by him and not on account of prepetition services.

1

The Court held an evidentiary hearing on June 21, 2016 on this contested matter at which two witnesses, including the Debtor, testified and eleven exhibits were introduced into evidence by agreement of the parties.  In accordance with Fed. R. Bankr. P. 7052, the Court now makes the following findings of fact and conclusions of law in this contested matter.  This matter is a core proceeding in which this Court has authority to enter a final order.  *See* 28 U.S.C. § 157(b)(2)(E).

**II. FACTS**

Sylvia is an attorney licensed in the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.  He maintains an office in New Bedford, Massachusetts.   He filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 23, 2015.  In 2013 and thereafter, he represented XL Foam, LLC ("XL"), an affiliate of M.H. Stallman Company, Inc. (the "Stallman Company").  XL was Sylvia's client, although he sent invoices to the Stallman Company.  XL's principal was James Stallman ("Stallman"), who testified at the evidentiary hearing.  Sylvia and his son, who is his law partner, represented XL in several legal matters, including a civil action in Barnstable Superior Court in which XL was the Plaintiff (the "Barnstable action").  The details of the Barnstable action are unclear as the pleadings and docket in the state court action were not introduced into evidence. Sylvia provided some of the background of the dispute, which appears to be complicated commercial litigation, but the details of the Barnstable action are not germane to this dispute.   Under the terms of Sylvia's engagement with XL, he was to be paid for his services on an hourly basis.

Although a written fee agreement was not introduced into evidence, Stallman recalled there was a written retention agreement between XL and Sylvia.

Sylvia invoiced the Stallman Company for the services rendered to XL, usually, but not always, on a monthly basis. The Trustee introduced into evidence prepetition invoices from Sylvia to the Stallman Company from September 30, 2014 through the petition date, which totaled $66,825.83. *See* Exhibit 1.  Sylvia also sent invoices to the Stallman Company after the commencement of his bankruptcy case and billed it $291.55 on February 28, 2015, $4,694.93 on March 31, 2015, $8,924 on April 30, 2015, and $2,070.65 on May 30, 2015.   Sylvia's invoices are detailed, and contain the amount of time spent per task, descriptions of tasks performed, the hourly rate charged, as well the total amount charged for each task.

Stallman testified that he usually did not pay the exact amount of Sylvia's bills. He stated that he paid less than the invoiced amount in round numbers because he thought the bills were excessive and unreasonable.  Sylvia confirmed that he had difficulties collecting amounts owed from Stallman.  He testified that he often had to go to Stallman's office to collect payments and that the checks he received from Stallman frequently bounced, so he deposited them quickly upon receiving them without keeping copies.  He did not introduce any bank statements reflecting deposits of amounts received.

As reflected in Sylvia's "Client Account Payments Received by Date" records, introduced as Exhibits 2 and 5 at the evidentiary hearing, Stallman paid a total of $23,000

prepetition from November 26, 2014 through Feb. 20, 2015 and a total of $12,070.65 postpetition from March 5, 2015 through May 29, 2015 as follows:

| DATE PAYMENT RECEIVED | AMOUNT PAID |
|---|---|
| November 26, 2014 | $1,500 |
| December 12, 2014 | $5,000 |
| December 23, 2014 | $9,000 |
| February 18, 2015 | $2,500 |
| February 20, 2015 | $5,000 |
| March 5, 2015 | $2,500 |
| March 30, 2015 | $2,500 |
| May 29, 2015 | $5,000 and $2,070.65 |

The Trustee seeks turnover of $10,000 received by the Debtor postpetition on March 5, 2015 ($2,500), March 30, 2015 ($2,500) and May 29, 2015 ($5,000). She does not seek turnover of the $2,070.65 payment made on May 29, 2015 or any of the $23,000 received by Sylvia prepetition.

Stallman did not instruct Sylvia on how to apply any of his payments to the invoices issued, and there was no evidence of any agreements between the parties as to the allocation of payments. There was, however, an affidavit dated February 16, 2016 which Sylvia prepared for Stallman's signature, in which Stallman attested that he intended the $2,500 payment made on March 30, 2015 to be applied to the March 2015 bill

4

and the $5,000 payment made on May 29, 2015 to be applied to the April and May 2015 bills. *See* Exhibit 8. On examination by Trustee's counsel, Stallman conceded that he did not direct Sylvia as to application of payments and that the allocation was Sylvia's decision.

Sylvia also sent two additional bills to the Stallman Company in April and May of 2015. The invoice dated April 30, 2015 was in the amount of $8,924.86. *See* Exhibit 6. The invoice reflected new charges of $8,924.86 and a balance forward of $4,986.48. The invoice also reflected two payments of $2,500 made on March 5 and March 30, 2015 and further provided that the March 5th payment was "Applied to Feb. and March Invoice" and that the March 30th payment was "Applied to March Invoice." In addition, the invoice provided: "TOTAL NOW DUE: $8,911.34." The invoice dated May 30, 2015 was in the amount of $2,070.65 for new charges. *See* Exhibit 7. That invoice reflected that the balance forward was $8,911.34 and that payment of $5,000 was received on May 29, 2015. The invoice provided "TOTAL NOW DUE: $5,981.99." Sylvia moved to withdraw from the Barnstable action. Stallman opposed Sylvia's withdrawal, and the Superior Court denied the motion to withdraw.

As stated above, the petition date was February 23, 2015. On his Schedule B – Personal Property, which Sylvia executed under the penalty of perjury, in response to Question 16 which requires a description of accounts receivable and their value, Sylvia listed $61,825.83 in accounts receivable and described them as: "Legal billing for XL

Foam, LLC and Webster Point."[1]    The Debtor rendered legal services for, and was a partner in, a development known as Webster Point Village.    Schedule B is unclear as to what amounts are owed by each client as accounts receivable were lumped together. Sylvia testified that his response to Question 16 was actually limited to the amount owed by XL and did not include amounts due from Webster Point.    The Debtor's office records, in particular Exhibit 2, are unclear as to the amount owed by the Stallman Company as of the petition date, February 23, 2015.    Sylvia's invoices introduced as Exhibit 1 total $66,825.83.    The prepetition payments made by Stallman according to Sylvia's internal office records were $23,000.    Sylvia, however, did not retain copies of any of the checks representing payments received from Stallman.    Thus, as of the petition date, it appears that XL owed Sylvia approximately $44,000.[2]

As noted above, the parties did not have an agreement as to how any payments were to be applied to outstanding invoices because Stallman did not pay Sylvia's invoices in full and did not direct application of any payments. After commencement of the bankruptcy case, Sylvia told Stallman that he was still owed a substantial amount and wished to withdraw from the Barnstable action because of the difficulties collecting fees.

---

[1]  On his original Schedule C – Property Claimed as Exempt, the Debtor claimed $12,583 of the accounts receivable as exempt under 11 U.S.C. § 522(d)(5). The Trustee filed an objection to his exemption, and the Debtor thereafter amended his Schedule C to delete his claim of exemption in the accounts receivable.

[2]  The Trustee averred in her Turnover Motion that, as of the petition date, the Debtor had unpaid invoices from XL and/or the Stallman Company in the sum of $47,337.03, but this figure was not supported by evidence at trial. Nevertheless, the Trustee's claim is only somewhat higher than the Court's calculation based on Sylvia's records and invoices.

Because Sylvia's request to withdraw from the Barnstable action was denied, Sylvia continued to work on the Barnstable action after the commencement of his bankruptcy case.

After the bankruptcy case was commenced on February 23, 2015, Sylvia issued a bill to the Stallman Company on February 28, 2015, in the sum of $291.55, for services rendered on only two days: February 24 and 27, 2015. Sylvia testified that he did this because of his bankruptcy filing and that he wanted to start a new running account with Stallman. He stated that he could not remember if the March 5, 2015 payment of $2,500 received from Stallman was actually for the prepetition invoices in Exhibit 1, adding that he stated that he did not know what amount was outstanding on March 5, 2015. Sylvia testified that at the time he received the $2,500 payment on March 5, 2015, he did not want to continue representing XL or Stallman and that Stallman paid that money to him so that he would continue with the case. However, this testimony is inconsistent with the denial of his request to withdraw.

## III. LEGAL PRINCIPLES

A party who is in possession of property of the estate is required to turn over such property to the trustee. 11 U.S.C. § 542(a). A trustee is required to file an adversary complaint to obtain turnover of property of the estate, unless the debtor is in possession of property of the estate, in which event a motion for turnover is sufficient. *See* Fed. R. Bankr. P. 7001(1). Property of the estate is broadly defined in 11 U.S.C. § 541(a) to include all legal and equitable interests of the debtor in property as of case commencement. *See* 11 U.S.C. § 541(a)(1). Amounts owed to a debtor under existing contracts as of the petition

7

date, are property of the estate.  *See* <u>Grochal v. Ocean Tech. Servs. Corp. (In re Baltimore</u>

<u>Marine Indus., Inc.)</u>, 476 F.3d 238, 240 (4th Cir. 2007).  Earnings by an individual debtor

for services performed after the commencement of a Chapter 7 case, however, are not

property of the estate.  *See* 11 U.S.C. § 541(a)(6).  The postpetition earnings exception

under this subsection is construed narrowly, and only applies to postpetition payments

attributable to postpeititon services actually rendered by the debtor.  *See* <u>Longaker v.</u>

<u>Boston Scientific Corp.</u>, 715 F.3d 658, 662 (8th Cir. 2013), *cert. denied*, __ U.S. __ 134 S. Ct.

537 (2013).  Where the debtor is an attorney, income attributable to prepetition services is

property of the estate.  *See* <u>Jess v. Carey (In re Jess)</u>, 169 F.3d 1204, 1207 (9th Cir. 1999).

## IV. ANALYSIS

Weighing all of the evidence, the Court finds that the $10,000 in postpetition

payments made to Sylvia which the Trustee seeks to recover were on account of

prepetition services and, thus, were property of the estate.  The affidavit prepared by

Sylvia for Stallman to sign was contrived to rebut the Trustee's demand for disgorgement

of the $10,000 in postpetition payments, and is entitled to no weight and the Court

discredits the averments in the affidavit.

Sylvia's contention that the postpetition payments made by Stallman to him were

actually for postpetition services is not credible, and is belied by his own invoices and

records as well as the circumstances of his continuation in the Barnstable action.  Sylvia

testified that the $10,000 in postpetition payments were actually on account of his

agreement to continue with the Barnstable action and were for postpetition services.  This

position is contrary to historical facts.  Sylvia stated that he had difficulties collecting

from Stallman and wished to withdraw from his representation.  Stallman, however, objected to his withdrawal from the Barnstable action, and, indeed, the Superior Court denied him leave to withdraw.   Thus, Sylvia's continuation in the Barnstable action postpetition was not because he received additional monies, but because the Superior Court and his client insisted that he continue with his representation.

There was no evidence to support the contention that Stallman and Sylvia discussed the application of any of the payments totaling $10,000 in March or May of 2015.  Indeed, the undisputed evidence is that the parties had no agreement about how payments should be applied.   There was also no evidence to suggest that Sylvia asked Stallman for a retainer for services going forward after his bankruptcy.

 The payment made on March 5, 2015 of $2,500 could not have been for the postpetition February 28, 2015 invoice which was only in the amount of $291, and there was no evidence that Sylvia and Stallman agreed on a new retainer for postpetition services.  Although Sylvia's invoices dated April 30, 2015 and May 30, 2015 reflected that the $2,500 payments made on March 5th and March 30th were applied to February and March's invoices, this interpretation in inconsistent with Sylvia's other bills and records.  The invoice dated March 31, 2015 in the amount of $4,694.93 does not reflect any payments of $2,500 made on March 5th or March 30th, as credits to the postpetition March 31st bill, as Sylvia now claims even though the March 31st invoice was issued *after* the receipt of the March 5th and 30th payments.  The April 30, 2015 invoice purports to credit the two $2,500 March payments to February and March's bills, but the bills for those months do not include the credits. Sylvia did not explain why he included the March

payments as credits to February and March bills on the bill dated April 30 and not before in the March 31st bill.

The question of whether the payment of $5,000 received on May 29, 2015 was for postpetition services is more complicated than the issues involving the March payments. The April 30, 2015 bill was for $8,924.86. The payment was made on May 29, 2015, before the issuance of the May 30, 2015 invoice for $2,070.65, and it appears from that invoice that the $5,000 was applied to the bill dated April 30, 2015 which had an adjusted balance of $8,911.34 as of the end of April.  However, Sylvia's internal office records, namely his chart of Client account payments introduced as Exhibit 5, reflect a payment by Stallman in the of amount $2,070.65 on May 29, 2015.   This payment is not reflected on the May 30, 2015 invoice even though the $5,000 payment is reflected on that invoice.  Thus, the integrity of Exhibit 5 or the May 30, 2015 invoice, or both, is questionable. Again, Sylvia's contention that the $5,000 payment in May was for postpetition services is belied by his sworn Schedule B which lists the value of the account receivable from XL as $61,825.83. Furthermore, Sylvia's client account payment chart, introduced as Exhibit 2, lists payments of $2,500 and $5,000 on February 18, 2015 and February 20, 2015, respectively. These payments are not listed as credits on the February or March 2015 invoices, thus further impugning the credibility of the Debtor's records and invoices.

The inference that the three checks received by the Debtor in March and May (two payments of $2,500 and one payment of $5,000) were for prepetition services is supported by the payment of $2,070.65 by Stallman to Sylvia on May 29, 2015.  This payment was in the exact amount of the charges for the month of May 2015 pursuant to

the May 30, 2015 invoice.   It appears that only in May of 2015 did the parties intend for the payment by Stallman to be allocated to a particular bill.

The credible evidence supports the conclusion that the payments made by Stallman on March 5, 2015 and March 30, 2015 of $2,500 and the payment of $5,000 made on May 29, 2015 were for prepetition services and invoices and that the Trustee is entitled to recover the amount of $10,000 in accounts receivable from the Debtor as those receivables are property of the bankruptcy estate which the Debtor was not entitled to collect.  An order shall enter allowing the Turnover Motion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 17, 2016